IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VERLINDA JOHNSON,

          Plaintiff,

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

CIVIL ACTION FILE NO.

1:07-CV-1493-JFK

## ORDER AND WRITTEN OPINION

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for disability benefits.  For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings in accordance with the discussion *infra*.

## I.    Procedural History

Plaintiff Verlinda Johnson filed an application for supplemental security income on October 24, 2002, alleging disability since June 12, 1999.  [Record ("R.") at 18,

69].  After her application was denied initially and on reconsideration, a hearing was held on January 12, 2006.  [R. at 35, 41, 540].  At the hearing, Plaintiff's counsel agreed to an alleged onset date as of her application, October 24, 2002.  [R. at 545].  The Administrative Law Judge ("ALJ") issued a decision on March 10, 2006, denying Plaintiff's claims.  [R. at 18-26].  Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request on April 27, 2007, making the hearing decision the final decision of the Commissioner.  [R. at 7-9].  On June 15, 2007, Plaintiff filed the above-styled action in this court seeking review of the final decision.  [Doc. 2].  The parties have consented to proceed before the undersigned Magistrate Judge. [Docs. 5, 6].

## II.    Facts

The ALJ found that Plaintiff Johnson has asthma and obesity, impairments which are "severe" within the meaning of the Social Security regulations.  [R. at 19]. However, the ALJ concluded that these impairments did not meet or equal, either singly or in combination, the requirements for any impairment listed in Appendix 1, Subpart P, Regulations No. 4.  [R. at 19].  The ALJ found that although Plaintiff's limitations prevented her from performing her past relevant work, she was able to

2

perform other work that existed in significant numbers in the national economy.  [R. at 24-25].  As a result, Plaintiff was found not to be under a disability.  [Id.].

The ALJ's decision [R. at 18-26] states the relevant facts of this case as modified herein as follows:

The claimant is a forty-six year-old individual with a high school education.  She has semi-skilled and unskilled past relevant work experience as a cleaner, hospital cleaner and a day care worker.  (Exhibits B-16E and B-13E).  The claimant alleges that she became disabled on October 24, 2002, as amended, due to asthma, chest pains, high blood pressure, sinus headaches, problems with standing for a "long time," pain in both hands and blurred vision.  (Exhibits B-8E and B-10E).

At the hearing, the claimant testified that she weighs two-hundred twenty-five pounds and has a height of sixty-two inches.  She stated she last worked full time in 1980 but began working part time three days a week for eight hours a day beginning in May 2005.  She stated that she is a housekeeper at a nursing home and earns $7.00 an hour.  The claimant indicated that the job does not require lifting more than a small trash can, but she uses a vacuum cleaner and mops.  She has two breaks of fifteen minutes each and a thirty minute lunch break.  She testified that she is unable to work "more hours."  Despite this work activity, the claimant further testified that she is

3

unable to bend or stoop due to problems with her joints.  She also stated that her hands and legs swell and hurt and have done so for "years."  She stated that her doctor gives her shots for water retention, but it is not Lasix.  She stated that she takes medication for high blood pressure and uses a nebulizer and inhalers for asthma.  She further testified that if she tells her boss she is in pain, the boss lets her sit down three or four times a day.  The claimant indicated at the hearing that her condition is the same as when she started work and that she reclines on the sofa after work due to swelling.  She stated that she is unable to do "fine" manipulation with her fingers.  Finally, the claimant testified that she lives with her children, ages seven and thirteen, and that her son helps with the housework, but she cooks, makes the beds, and drives a car.

The medical evidence of record establishes that the claimant complained of left knee pain on February 19, 2003, and an x-ray showed only "mild arthropathy, nonspecific, but compatible with degenerative arthrosis."  (Exhibit B-21F, page 5). She was assessed with a left knee sprain.  (Exhibit B-21, page 4).  The claimant was also seen at Emory Clinic on March 28, 2003, for complaints of joint pain in all extremities, back pain and muscle pain.  The claimant also indicated that she had "occasional" shortness of breath due to asthma.  (Exhibit 24F, page 2).  Peter Rosandich, M.D., advised that the claimant had no evidence of inflammatory disease

4

and his impression was that the claimant had "a pain amplification problem . . . exacerbated by her obesity, inactivity and poor sleep." (Exhibit B-24F, page 4). His diagnostic impressions were: polymalgias/polyarthralgias, without evidence of inflammatory disease; pain amplification problem; obesity; insomnia; and probable mild carpal tunnels syndrome in the right hand. Dr. Rosandich recommended that the claimant lose weight and use a splint for her right hand symptoms. (Exhibit B-24F, page 4).

The claimant was treated at Emory-Adventist Hospital from February 2002, through November 14, 2005, for a variety of complaints. These notes reflect that her hypertension was well controlled and that her asthma was stable. (Exhibit B-26F, page 15). She was evaluated for non-cardiac chest pain in March 2004. (Exhibit B-26F, pages 23-24). She was again evaluated due to complaints of chest pain and left arm tingling/numbness in September 2004. (Exhibit B-26F, pages 9-20). An echocardiogram, performed on September 21, 2004, was normal (Exhibit B-26F, page 19) and a SPECT thallium study, performed the same day was negative (Exhibit B-26F, page 18). She was seen for an insect bite/sting in April 2005 (Exhibit B-26, page 6) and abdominal pain with vomiting, likely related to "bad food exposure" (Exhibit B-26F, page 2).

A health department vision screening showed that the claimant had 20/30 vision bilaterally, without glasses, in November 2002, as well as in January 2003.  (Exhibit B-20F, pages 2-3).

The claimant has been treated by Timothy Young, M.D., for a variety of complaints.  Dr. Young treated the claimant from April through November 2002, for an "acute asthma attack," "related to allergies," as well as for sinus congestion, reactive airway disease with bronchospasm, questionable peripheral vascular disease, and migratory arthritis.  (Exhibit B-19F).  In addition, the records contain a laboratory report showing an elevated "sedimentation rate" of 33 (with reference range from 0-20), in November 2002.  (Exhibit B-27F, page 88).  A note dated November 26, 2002, indicates that the claimant's asthma was stable and that her hypertension was stable on Ziac.  (Exhibit B-27F, page 86).  In February 2003, she was advised to take Tums and Fosmax for "low" bone strength.  (Exhibit B-27F, pages 81-80).  She was treated for costohondritis in August 2003 (Exhibit B-27F, page 59) and for swelling and limited motion in the left shoulder in October 2003 (Exhibit B-27F, page 54).  Also, in October 2003, she was treated for "asthma, extrinsic" with painful breathing, wheezing, coughing and nasal congestion/discharge, sinus pain, and sore throat.  (Exhibit B-27F, pages 52-54).  A spirometry test, performed on January 20, 2004,

6

showed a best FEV1 value of 2.05 ad FVC value of 2.29.  The test report interpreted the findings as a "normal spirometry" without significant improvement post medication.  (Exhibit B-27F, page 49).  During the following year, Dr. Young treated the claimant for respiratory complaints he labeled as "cough variant asthma," "acute bronchitis" and "intrinsic asthma with acute exacerbation."  He prescribed a variety of inhalers and nasal sprays.  (Exhibit B-27F, pages 5, 17, 23-24, 32, 41 and 45).  A note on September 12, 2005, indicates that her FEV1 was at 77 percent (Exhibit B-27F, page 16), and in October 2005, he assessed stable asthma (Exhibit B-27F, page 8).

With regard to her musculoskeletal complaints, the record shows that on January 20, 2004, Dr. Young treated the claimant for knee pain.  (Exhibit B-27F, page 45).  On June 14, 2004, while treating the claimant for respiratory problems, he noted that the claimant had limited range of motion and swelling in the knees, but he did not make a diagnosis related to the knees.  (Exhibit B-27F, page 37).  He gave her Kenalog and Decadron injections in November 2004 (Exhibit B-27F, pages 33 -32) and May 2004 (Exhibit B-27F).  On May 23, 2005, she was treated for hand joint pain, as well as knee swelling with limited range of motion.  She was treated with injections.  (Exhibit B-27F, pages 23-24).  On September 12, 2005, Dr. Young noted limited range of motion and swelling in the hip and assessed hip pain.  (Exhibit B-27F, page 17).  On October

7

3, 2005, the claimant complained of swelling which worsens with standing/walking, which Dr. Young assessed as "reactive edema." (Exhibit B-27F, page 8). Dr. Young also diagnosed venous insufficiency. (Exhibit B-27, page 11). He prescribed periodic Lasix and advised her to elevate her legs when sitting and use stockings, increase her hydration and encouraged her to engage in aerobic activity. (Exhibit B-27F, page 12). On December 5, 2005, she was again encouraged to participate in aerobic activities three times per week and light exercise and to increase hydration, as well as continued on her same medications. (Exhibit B-27F, page 7).

Dr. Young completed several forms relative to the claimant's residual functional capacity. On August 7, 2003, he stated that the claimant was able to sit for six hours without interruption, stand and walk less than four hours total, and only two hours without interruption, but also indicated that the claimant was capable of lifting and carrying less than six pounds occasionally. He attributed her lifting/carrying restrictions to neck and joint pain, her standing and walking limitations to severe asthma, and her ability to sit for only six hours was due to fatigue. Dr. Young further stated that the claimant was able to occasionally balance and to never perform other postural activities, was limited in pushing/pulling and speaking, but not in handling, and had environmental restrictions due to asthma. He opined the claimant had been

8

limited to this degree since January 2002.  (Exhibit B-28, pages 7-8).  Dr. Young completed an addendum to this assessment and advised that the claimant needed to lie down during the day (but did not need to elevate her legs), had difficulty concentrating due to pain, fatigue, depression, and medication side effects, and stated fatigue interfered with claimant's social interaction and performance of household chores, but did not interfere with basic work activities.  He also stated that the claimant was significantly limited in her ability to use her two hands for work with small objects and performing repetitive fine hand-finger actions.  He stated the claimant needed unscheduled breaks and would have four or more absences a month.  (Exhibit B-28F, page 9).  Dr. Young further stated that the claimant's asthma met the requirements of the asthma listing as well as was equivalent to the listing, yet noted that her FEV1 value was 1.21 wherein the listing value was 1.15.  (Exhibit B-28F, page 10).

Dr. Young completed another form and dated it "11/21/06."  In this form, he stated that the claimant was similarly limited except the claimant was not limited in the use of her hands for handling and performing repetitive, fine hand-finger actions.  He also indicated she would need only one or two unscheduled breaks and advised that fatigue would limit the claimant in performing basic work activities.  (Exhibit B-28F, page 6).  On November 5, 2004, he completed another form on the claimant's ability

to perform physical activities and stated that the claimant could sit for six to eight hours, stand and walk for six hours with breaks, and lift and carry less than ten pounds occasionally.  Dr. Young further opined that the claimant was unable to perform any postural activities, that her ability to push/pull was affected, and that she had environmental restrictions.  He stated that the claimant had been at this level of functioning since October 2002. (Exhibit B-28F, pages 4-5).  On December 5, 2005, he indicated that there was no change in the claimant's physical functioning or in her need to lie down, pain/fatigue, or in her ability to concentrate. (Exhibit B-28F, pages 1-3).

A consultative examination was performed by Dallas Dan von Hessler, M.D., on March 4, 2003.  He indicated that the claimant reported having asthma since she was six years of age and an unspecified injury to the left lower extremity.  He indicated that the claimant's chief complaint was dyspnea that interferes with activities of daily living.  He performed a pulmonary function test.  He indicated the claimant understood the instructions but that her effort was "questionable, as were the results." (Exhibit B-22F, page 8).  His examination indicated that the claimant was wearing a brace on the left knee but range of motion of all joints was noted as normal.  Her gait was "asymmertrical," but her station was normal.  Muscle strength, grip and pinch were all

10

within normal limits.  He advised that she weighed two-hundred twenty pounds and had a height of sixty-two inches and stated that the claimant's obesity did not affect mobility, respirations, heart function, or ambulation.  He opined that the claimant was able to stand and walk "with difficulty" but that she was not limited in sitting or sustaining positions for prolonged periods.  He found no difficulty with the claimant's reaching and handling or in her ability to lift or carry weights.  (Exhibit B-22F, pages 4-5).

The vocational expert testified at the administrative hearing that the claimant had past relevant work as a cleaner, which was light and unskilled work, a hospital cleaner, which was medium and unskilled work, and a daycare worker which was light and semi-skilled work.  (Exhibit B-16E).  He stated further that with the residual functional capacity as determined by the ALJ, the claimant is unable to perform any of her past relevant jobs but that she could perform the following jobs: telephone order clerk (1,000 jobs locally/25,000 jobs nationally), addresser (200 jobs locally/20,000 jobs nationally), and final assembler (100 jobs locally/20,000 jobs nationally).  The ALJ considered that an Emory note by Dr. Rosandich, dated March 28, 2003, stated "possible mild" carpal tunnel syndrome (Exhibit B-24F, page 4), and assuming the ALJ limited the claimant in the use of her hands, the vocational expert testified that

11

this additional limitation would only preclude the claimant from performing the assembly job but that the remaining jobs would still be available.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." Ellison v. Barnhart, 355

F.3d 1272, 1275 (11th Cir. 2003) (quoting <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997)).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Lewis</u>, 125 F.3d at 1439.  "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [she] is disabled, and therefore entitled to receive Social Security disability benefits." <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).   Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving her disability. <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not engaged in substantial gainful activity. <u>Id.</u> The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments. <u>Id.</u> At step three, the Commissioner will determine if

13

the claimant has shown that her impairments meet the Listing of Impairments found in Appendix 1.  If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience.  Id.  "If the claimant cannot prove the existence of a listed impairment, [she] must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work." Doughty, 245 F.3d at 1278.  "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform." Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999), cert. denied, 529 U.S. 1089, 120 S. Ct. 1723, 146 L. Ed. 2d 644 (2000).  The Commissioner makes this determination by considering the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  "If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled." Jones, 190 F.3d at 1228.

14

## IV.   Findings of the ALJ

The ALJ made the following findings:

1.   The claimant has not engaged in substantial activity since the alleged onset of disability.  (20 CFR § 416.920(b)).

2.   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).

3.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.   The claimant's allegations regarding her subjective limitations are not totally credible for the reasons set forth in the body of the decision.

5.   All of the medical opinions in the record regarding the severity of the claimant's impairments were considered. (20 CFR § 416.927).

6.   The claimant has the residual functional capacity described in the decision.  (20 CFR § 416.967).

7.   The claimant is unable to perform any past relevant work. (20 CFR § 416.965).

8.   The claimant is a younger individual.  (20 CFR § 416.963).

9.   The claimant has a high school education.  (20 CFR § 416.964).

10.     Transferability of work skills is not an issue in this case. (20 CFR § 416.968).

11.     Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work.  Using Medical-Vocational Rules 201.21 and 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy the claimant could perform.  Examples of such jobs include: telephone order clerk (1,000 jobs locally/25,000 jobs nationally), addresser (200 jobs locally/20,000 jobs nationally), and final assembler (100 jobs locally/20,000 nationally).

12.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision.  (20 CFR § 416.920(f).

[R. at 25-26].

## V.     Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Verlinda Johnson has not performed substantial gainful activity since her alleged onset of disability.  [R. at 19].  At the second step, the ALJ determined that Plaintiff has asthma and obesity, impairments which are "severe" within the meaning of the Social Security regulations.  [R. at 19].  However, the ALJ found at the third step that these impairments did not meet or equal the requirements for any impairment

16

listed in Appendix 1, Subpart P, Regulations No. 4.  [R. at 20].  At the fourth step of the sequential evaluation, the ALJ determined that Plaintiff was not able to perform her past relevant work as a cleaner, hospital cleaner, and a daycare worker.  [R. at 24].  At the fifth step, the ALJ concluded that Plaintiff was able to perform other work that existed in significant numbers in the national economy.  [R. at 25].  As a result, Plaintiff was found not to be under a disability.  [Id.].

Plaintiff argues that the ALJ erred when he found that her joint disease was not a severe impairment and when he failed to fully assess the limitations caused by her obesity.  [Doc. 11 at 13-20].  Plaintiff also contends that the ALJ did not properly evaluate the opinions of her treating physician, Dr. Timothy Young.  [Id. at 20-26].  Finally, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he overlooked important pieces of evidence.  [Id. at 26-27].

On January 29, 2008, this court held a hearing to give counsel the opportunity to address one aspect of the ALJ's decision which appeared to have been based on a misinterpretation of the medical record.  The issue was whether the ALJ's understanding of findings made by Dr. Peter Rosandich was erroneous.  Plaintiff's arguments regarding this issue were made in the section of her brief discussing the ALJ's evaluation of Dr. Young's opinion.  [Doc. 11 at 25-26].  However, Dr.

17

Rosandich's findings and the ALJ's interpretation of them are relevant to almost all of the arguments made by Plaintiff. Because of this issue's relevance and the fact that it was addressed extensively by counsel for both parties at the hearing, the court will address it first.

Dr. Rosandich is a rheumatologist who examined Plaintiff Johnson in March 2003 at the Emory Clinic. [R. at 380]. He found that Plaintiff had joint pain (polyarthralgia) and muscle pain (polymyalgia) but found "no evidence of any inflammatory disease." [R. at 382]. He also found that she had "positive Tinel's sign with her right wrist that sends paresthesias to her second and third fingers." [Id.]. Dr. Rosandich concluded that Plaintiff "mainly seems to have the pain amplification problem, which I think is exacerbated by her obesity, inactivity, and poor sleep." [Id.].

The ALJ found that "the record does not document the severity of the subjective allegations about which the claimant testified at the hearing and alleged in the documents in the record."[1] [R. at 23]. In support of this finding, the ALJ specifically

---

[1]When a claimant seeks to establish disability through testimony of pain or other subjective limitations, a three part "pain standard" established by the Eleventh Circuit applies. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id.

18

noted a lack of objective medical tests and findings, as well as the fact that Dr. Rosandich's "evaluation at the Emory clinic stated that there was pain amplification." [R. at 23]. It appears that the ALJ credited Dr. Rosandich's findings. The wording of the ALJ's opinion indicates that he not only believed that Dr. Rosandich's diagnosis of a pain amplification problem was unsupportive of Plaintiff's claims, but that it actually discredited Plaintiff's subjective complaints of pain. [R. at 20, 23].

Plaintiff writes that the ALJ misunderstood Dr. Rosandich's finding of a pain amplification problem and believed that it suggested malingering. [Doc. 11 at 25]. At the hearing, counsel for the Commissioner argued that the ALJ did not consider the pain amplification finding to be malingering but simply more proof that Plaintiff's pain claims were unsupported by evidence in the record. The undersigned agrees with Plaintiff on this issue. Although it is not clear, the context of the ALJ's statements suggests that he understood the pain amplification finding to be similar to a finding of malingering. Even if the ALJ did not understand Dr. Rosandich's finding to suggest malingering, the fact that the ALJ cited pain amplification in support of his decision to discredit Plaintiff's pain complaints reveals some confusion on the part of the ALJ. Dr. Rosandich's finding of a pain amplification problem indicates that the rheumatologist believed that Plaintiff experienced pain at a greater degree than normal.

19

[R. at 382].  This finding supports Plaintiff's complaints of pain; it does not discredit them as the ALJ believed.

Counsel for the Commissioner correctly noted that Dr. Rosandich's findings comprised only a few pages out of the more than 500 in the record.  [R. at 380-83]. The implication from this fact is that, even if the ALJ misinterpreted Dr. Rosandich's findings, this error was relatively insignificant and that there was substantial evidence supporting the ALJ's decision.  The problem with this argument is that the ALJ's misunderstanding of Dr. Rosandich's pain amplification finding significantly affected numerous aspects of the ALJ's decision.  As noted *supra*, the misunderstanding was one reason the ALJ discredited Plaintiff's subjective complaints of pain.  It also appears that discrediting Plaintiff's pain complaints, in turn, played a large role in the ALJ's decision to discount Dr. Timothy Young's assessments of Plaintiff's limitations caused by joint pain.  [R. at 23].

Dr. Young treated Plaintiff for over three years and completed many reports and assessments.  In August 2003, Dr. Young stated in a physical assessment that Plaintiff was only capable of lifting and carrying less than six pounds occasionally due to "neck and joint pain."  [R. at 524].  Dr. Young opined that the claimant was able to occasionally balance, but could never climb, stoop, crouch, kneel, or crawl.  [R. at

20

525].  In an addendum to the assessment, Dr. Young found that Plaintiff would need to lie down at will and to alternate at will between sitting and standing due to fatigue or to obtain relief from pain.  [R. at 526].  He also stated that Plaintiff would have difficulty concentrating due to pain, fatigue, depression, and medication side effects. [Id.].  In November 2004, Dr. Young completed another physical assessment and found that Plaintiff could only occasionally lift and carry less than ten pounds.  [R. at 521].  He found that due to joint pain and fatigue, she could stand and/or walk only up to six hours per work day with breaks.  [Id.].  Dr. Young also found that Plaintiff could not perform any of the six listed postural activities and that her pushing and pulling was affected by her asthma and hypertension.  [R. at 522].  Dr. Young again completed an addendum, although it appears that this was done two years later in November 2006.  [R. at 523].  Like his 2003 assessment, Dr. Young found that Plaintiff would need to lie down at will and to alternate at will between sitting and standing due to fatigue or to obtain relief from pain.  [R. at 523].  He also found that Plaintiff would have difficulty concentrating due to pain, depression, and medication side effects. [Id.].  Dr. Young opined that Plaintiff's condition had been substantially the same since October 2002.  [R. at 522-23].

21

The ALJ acknowledged that Plaintiff complained to Dr. Young at various times about pain in her joints, but he found "no support for the limitations [Dr. Young] assigned due to joint pain." [R. at 23]. The ALJ stated that he discredited Dr. Young's opinions for a number of reasons, including allegedly inconsistent statements and "differing levels of limitations," discussed *infra*. [R. at 23]. However, the ALJ's written decision makes it clear that Dr. Rosandich's pain amplification finding, and the ALJ's resulting decision to discredit Plaintiff's pain complaints, were intertwined with the ALJ's finding that Dr. Young's opinions were not credible. [R. at 23]. This is further evidence that the ALJ's misunderstanding of Dr. Rosandich's finding had a significant impact on the ALJ's decision.

It also appears that all of the ALJ's findings related to Plaintiff's joint pain influenced his decision at step two of the sequential evaluation, when he found that Plaintiff's joint impairment was not severe. [R. at 19]. "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Whether an impairment is severe is a threshold

22

inquiry that "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

Dr. Rosandich found that Plaintiff had joint pain and a pain amplification problem.  [R. at 382].  Dr. Young likewise noted numerous limitations that Plaintiff experienced as a result of her joint pain.  The court finds that in light of the discussion *supra*, the ALJ's finding of non-severity with regard to Plaintiff's joint impairment was substantially impacted by the ALJ's misunderstanding of Dr. Rosandich's findings and by the effect this misunderstanding had on his decision to discredit Dr. Young's opinion and the Plaintiff's subjective complaints.

While Dr. Rosandich's evaluation of Plaintiff makes up a small portion of the record, his opinion is significant not only because it influenced the ALJ's decision, but because Dr. Rosandich is a rheumatologist and, thus, a specialist in an area related to Plaintiff's complaints.  One of the factors an ALJ must apply in weighing the opinion of a physician is whether the physician is a specialist.  20 C.F.R. §§ 404.1527(d), 416.927(d).  The ALJ apparently recognized that given Dr. Rosandich's area of expertise in rheumatology, his opinion was entitled to considerable weight.  The ALJ discussed Dr. Rosandich's evaluation in detail, and as noted *supra*, he cited Dr. Rosandich's finding of a pain amplification problem in support of his decision to

23

discredit Plaintiff's subjective complaints.  [R. at 20, 23].  All of these factors lead the court to conclude that the ALJ's misunderstanding of Dr. Rosandich's opinion was not harmless error and that remand is warranted on this basis.

Upon remand, the ALJ should reconsider Dr. Rosandich's evaluation, Plaintiff's subjective complaints, and the assessments of treating physician Dr. Young in accordance with the discussion *supra*.  While Plaintiff has made other arguments, most of these have already been addressed.  Plaintiff's remaining arguments need not be discussed in detail because the court has already found that the case must be remanded. The court, however, will briefly touch on a few issues raised by Plaintiff in order to provide further guidance to the ALJ upon remand.

The ALJ discounted the opinions of Dr. Young, a treating physician, regarding the limitations that Plaintiff had as a result of various impairments.  [R. at 23].  Social Security regulations provide in pertinent part:

> (2)    Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . .

> (i)   Generally, the longer a treating source has treated
> you . . . the more weight we will give to the source's
> medical opinion. . . .

20 C.F.R. § 404.1527(d)(2).  The Eleventh Circuit has consistently held that absent a

showing of good cause to the contrary, opinions of treating physicians must be

accorded substantial or considerable weight by the Commissioner.  See Lewis, 125

F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen,

826 F.2d 996, 1000 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th

Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985).  Good cause has

been found when the opinion of a treating physician is so brief and conclusory that it

lacks persuasive weight or when it is unsubstantiated by any clinical or laboratory

findings.  See Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Wilson v.

Heckler, 734 F.2d 518 (5th Cir. 1984) (citing Warncke v. Harris, 619 F.2d 412, 417 (5th

Cir. 1980)).

The undersigned has discussed the ALJ's decision to discount Dr. Young's

opinion in relation to Plaintiff's subjective complaints and Dr. Rosandich's opinion.

But there are other issues relevant to this decision that should be addressed upon

remand.[2]  In the ALJ's explanation of why he discredited Dr. Young's opinion, he noted a lack of objective evidence which supported Plaintiff's complaints of joint pain. However, Plaintiff has pointed out that clinical records from Dr. Young show that she repeatedly had limited range of motion and swelling in various joints, such as her knees, hips and shoulders.  [R. at 446, 452, 466, 474, 483, 487].

The ALJ also stated that he rejected Dr. Young's opinion because the treating physician "completed multiple forms in which he made inconsistent statements and assigned the claimant differing levels of limitation, despite the lack of evidence during that time which showed any significant change in the claimant's medical impairments or in the required level of treatment."  [R. at 23].  It does not appear, however, that the limitations found by Dr. Young in his evaluations were as radically different as the ALJ believed them to be.  The vocational expert ("VE") examined the 2003 and 2004 assessments completed by Dr. Young and testified that a person with the limitations as described in both of them could not perform sustained work.  [R. at 562-63].  The VE stated that it was the finding in both assessments of the need to lie down at will and the need to take unscheduled breaks which would suggest that Plaintiff could not

_____

[2]The court notes that the ALJ gave explicit and rational reasons for discrediting Dr. Young's opinion regarding alleged limitations caused by Plaintiff's asthma, and the ALJ's explanations were supported by specific citations to the record.  [R. at 23].

perform full-time work.  [Id.].  While the ALJ found that Dr. Young's assessments consisted of "inconsistent statements" and "differing levels of limitation," in light of the VE's testimony, it appears that any differences were relatively slight and not sufficiently substantial so as to provide good cause to discredit the treating physician's opinion.  Moreover, Social Security regulations provide that if an ALJ believes that "the report from [a claimant's] medical source contains a conflict or ambiguity that must be resolved," the ALJ "will seek additional evidence or clarification" from the physician.  20 C.F.R. § 416.912(e)(1).  In the present case, there is no indication that the ALJ recontacted Dr. Young to clarify the allegedly inconsistent statements.

Finally, the court notes that Dr. Young's opinion regarding the effect Plaintiff's obesity had on her limitations was consistent with Social Security Ruling ("SSR") 02-01p, which states: "Obesity can cause limitation of function. . . . [and may] affect ability to do postural functions, such as climbing, balance, stooping, and crouching." In both his 2003 and 2004 assessments, Dr. Young opined that Plaintiff could never climb, stoop, crouch, kneel, and crawl.  [R. at 522, 525].  Although Dr. Young's findings of Plaintiff's postural limitations were in line with SSR 02-1p, the ALJ found no limitations in these areas.  Still more problematic is the fact that the ALJ did not

27

explain why he found that Plaintiff's obesity would not affect her ability to do these postural functions.  SSR 02-1p provides in part:

> [W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. . . . [T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. [A]djudicators [should] consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

While the ALJ found that Plaintiff's obesity was a severe impairment [R. at 19], there is no indication that the ALJ evaluated the effects of Plaintiff's obesity and the combined effects of her obesity with other impairments.  It also does not appear that the ALJ was aware of the consistency between Dr. Young's findings and SSR 02-01p.  Upon remand, the ALJ should give consideration to all of these issues.


**VI.    Conclusion**

For all the foregoing reasons and cited authority, the undersigned **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings in accordance with the above discussion.  See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

28

The undersigned also **ORDERS** that Plaintiff's counsel be required to apply for attorneys fees under 42 U.S.C. § 406(b) **within ninety days** of the date the Commissioner issues his determination of the amount, if any, of Plaintiff's past due benefits.  See Bergen v. Commissioner of Social Security, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (citing McGraw v. Barnhart, 370 F. Supp. 2d 1141, 1154 (N.D. Okla. 2005)).

**SO ORDERED**, this 11th day of February, 2008.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

29